## Case No. 9,450.

### MERCHANTS' NAT. BANK OF CHICAGO v. MEARS et al.

[8 Biss. 158; 24 Int. Rev. Rec. 103; 5 Reporter, 426; 10 Chi. Leg. News. 180; 1 Thomp. Nat. Bank Cas. 353; 6 N. Y. Wkly. Dig. 46.] [1]

Circuit Court, N. D. Illinois. Feb., 1878.

NATIONAL BANKS—REAL ESTATE SECURITIES—BILL TO FORECLOSE MORTGAGE.

A national bank does not transcend its powers in taking from a customer as collateral security for a loan to him, the note and mortgage of a third party, together with certain personal securities; and if the borrower becomes insolvent, and the personal securities prove insufficient the bank can maintain a bill to foreclose the mortgage.

Bill of foreclosure.

Simeon Mears was a regular customer of the bank, frequently borrowing large sums of money. Sometime prior to 1875, he borrowed $5,000 on short time paper, and deposited as security, note of J. E. Warren for $4,740, secured by mortgage to E. Ashley Mears, the note being payable to E. Ashley Mears, and indorsed over by him to Simeon Mears. When the latter's note matured he could not pay it, and the bank took Warren's note. When that matured Warren was insolvent, and Simeon Mears, who had indorsed it, was called upon to pay as indorser of Warren's note. The bank all the while held other securities, and by selling these, Mears' debt was reduced to $2,887, on September 3, 1875, when he gave a new note for this sum, and the Warren note was treated as collateral for this.

Mattocks & Mason, for complainant.
E. A. Otis, for defendants.

BLODGETT, District Judge. This case was submitted to the court on final hearing upon the briefs of counsel and upon the proof taken before the master. It is a bill filed to foreclose a mortgage given by J. Esaias Warren and wife to E. Ashley Mears, by E. Ashley Mears assigned to Simeon Mears, and by Simeon Mears assigned to the complainant. The defendants to the bill are Simeon Mears and the mortgagor, and George B. Warren, who claims as a grantee of the mortgagor by a quit-claim deed made some month or so after the mortgage was made, but recorded prior to the mortgage. The quit-claim from J. Esaias Warren, the mortgagor, to George B. Warren, was put on record about a month prior to the recording of the mortgage, although the mortgage was made prior to the quit-claim deed, but the testimony of George B. Warren shows very clearly that he took title from J. Esaias Warren, mortgagor, merely as security, with the understanding that he took it subject to any liens which had been created upon the property.

There are two objections by these defendants to the foreclosure—first, on behalf of George B. Warren, that he is an innocent purchaser without notice, which I have said is sufficiently disposed of by his own testimony. [The second is, that this bank, the complainant in this case, being a national bank, acting under the national banking law, cannot make loans upon this class of security. The facts, about which there is to be no dispute, are, that Warren made his note, secured by a mortgage, to E. Ashley Mears; E. Ashley Mears assigned to his father, Simeon Mears, and Simeon Mears took it to the complainants in this case, the Merchants' National Bank of this city, and effected a loan, giving the note as collateral security for the loan. This was some time shortly after the note was made—within a few months. It was carried along until some time in the year 1875, when Mr. Mears paid up part of the loan, and the bank further reimbursed itself for the full loan, by the sale of other collaterals, and became the owner by sale, and an agreement between themselves and Mears, of the Warren note and mortgage as final security for the payment of the balance of twenty-seven or twenty-eight hundred dollars.] [2] It is objected, as I said before, that this transaction is ultra vires, that it is beyond the power of a national bank to make a loan upon real estate security, and a large array of authorities is cited in support of this proposition, and it is

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 5 Reporter, 426, and 6 N. Y. Wkly. Dig. 46, contain only partial reports.]

[2] [From 24 Int. Rev. Rec. 103.]

a proposition in regard to which I have no doubt, where it is invoked in a proper case; but here, I do not think the loan can be said to have been made upon real estate security. It was made upon a note to Mears, secured by collateral. The collateral was the Warren note—with such incidental security as the Warren note had.

I had occasion, about a year ago to go quite carefully into this question in a suit brought by the Northwestern National Bank against Loewenthal [unreported], where precisely this same question was raised and contested very vigorously. All the authorities were there considered that entered into this brief; and I held then, and on re-examination of my position at that time, I am contented with the view I then took of the case—that the transaction cannot be held to be within the limitations, either expressed or implied, of the national banking law. The seventh clause of section 5136 reads as follows: "To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes, according to the provisions of this title." Rev. St. U. S.

It is claimed, and I think it has been amply held by various state courts, and indirectly by the United States court, that national banks can only loan money on personal security directly. Section 5137 provides that: "A national banking association may purchase, hold and convey real estate for the following purposes, and no others: * * * Second, Such as shall be mortgaged to it in good faith by way of security for debts previously contracted."

Here is the express power to take a mortgage on real estate for debts which have been previously contracted. You may not loan money on real estate security; but after the creditor has made default, or after the loan has been actually made, the bank may take real estate security, unless the transaction should be colorable for the purpose of evading the statute—making the loan first, and taking security so soon afterwards as to show it was part of the original understanding; but in a case such as is provided here, there is no doubt but what the bank, after having made a loan, if it becomes doubtful of the borrower's solvency or ability to give satisfactory personal security, may then take a mortgage on real estate, so that this case now before me is not affected by the clause which I have just read. It simply authorizes them to take security on real estate under certain circumstances.

The seventh clause which was just read, undoubtedly contemplates that the loans made by a national bank shall be made upon personal security. But was this anything but personal security? The bank had the note of Simeon Mears with a large amount of other collaterals, the whole transaction, in its inception, amounting to thirteen thousand dollars, and from time to time, Mr. Mears made payments, and other securities were applied which were held by the bank, until the indebtedness from thirteen thousand dollars was reduced to twenty-seven hundred dollars, and then by an arrangement between the parties, this was taken as final satisfaction or security for the twenty-seven hundred dollars balance.

I think that this cannot be held within the inhibiting clause, and I am most clear that the defense set up cannot avail. There will be a decree for the complainant for the amount found due, and it will be determined, of course, after the sale of the estate, whether there is any residue to go to the other parties in interest, after satisfying the lien of the bank.